Arrest on Out-of-District Offense

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA    08 MAR 5 PM 3:49

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

### ARREST ON OUT-OF-DISTRICT OFFENSE

DEPUTY

'08 MJ 0684

Magistrate Case Number: _____

The person charged as  John Kasgorgis  now appears before this United States District Court for an

initial appearance as a result of the following charges having been filed in the United States District Court for

the  Eastern District of New York  with  Illegal Gambling  in violation of  Title 18, U.S.C. 1955 .

The charging documents and the warrant of the arrest of the defendant which was issued by the above

United States District Court are attached hereto.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information and belief.

DATED:  March 5, 2008.

Amanda J. Culver
Special Agent
Federal Bureau of Investigation


Reviewed and Approved:

Dated: March 5, 2008 .


Davene L. Finnel
Assistant United States Attorney

# United States District Court

_____ EASTERN _____ DISTRICT OF _____ NEW YORK _____

UNITED STATES OF AMERICA

V.                                              **WARRANT FOR ARREST**

JOHN KASGORGIS, et al.,                         **CASE NUMBER:**

Defendant(s).

TO:   The United States Marshal
      and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest___ JOHN KASGORGIS _____
                                                                  Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

[X] Indictment   [ ] Information   [ ] Complaint   [ ] Order of Court   [ ] Violation Notice   [ ] Probation Violation Petition

charging him with (brief description of offense)

ILLEGAL GAMBLING

in violation of Title _18_ United States Code, Section(s)_____ 1955 _____

HONORABLE KIYO A. MATSUMOTO                    UNITED STATES MAGISTRATE JUDGE
Name of Issuing Officer                         Title of Issuing Officer

_[signature]_                                   FEBRUARY 6, 2008, BROOKLYN, NEW YORK
Signature of Issuing Officer                    Date and Location

Bail fixed at $ _____          By _____

| **RETURN** |
| --- |
| This warrant was received and executed with the arrest of the above name defendant at _____ |

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER: | SIGNATURE OF ARRESTING OFFICER |
| --- | --- | --- |
| DATE OF ARREST | | |

MH:JL:P.B/EM
F. #2007R00730

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

JOSEPH AGATE,
VINCENT AMARANTE,
   also known as "Elmo,"
JEROME BRANCATO,
   also known as "Jerry,"
THOMAS CACCIOPOLI,
   also known as "Tommy
   Sneakers,"
FRANK CALI,
NICHOLAS CALVO,
CHARLES CARNEGLIA,
   also known as "Charlie
   Canig,"
JOSEPH CASIERE,
   also known as "Joe
   Rackets,"
MARIO CASSARINO,
   also known as "Lanza,"
DOMENICO CEFALU,
   also known as "Italian
   Dom," "Dominic," "Dom from
   18th Avenue" and "The
   Greaseball,"
JOSEPH CHIRICO,
   also known as "Joe Marco
   Polo,"
JOSEPH COROZZO,
   also known as "JoJo" and
   "Miserable,"
NICHOLAS COROZZO,
   also known as "Nicky,"
   "Little Nicky," "The
   Doctor," "The Little Guy,"
   "Seymour," "Grandpa" and
   "Grandfather,"
GINO CRACOLICI,

I N D I C T M E N T

Cr. No.
(T. 18, U.S.C., §§ 371, 664,
892(a), 894(a)(1), 1027,
1341, 1346, 1349, 1951(a),
1955, 1956(a)(1)(B)(i), 1956(h),
1962(d), 1963, 2 and 3551 et
seq.; T. 29, U.S.C., § 501(c))

CR 08 76

GARAUFIS, J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

FEB 06 2008

BROOKLYN OFFICE

JOHN D'AMICO,
    also known as "Jackie the
    Nose" and "Jackie,"
SARAH DAURIA,
VINCENT DECONGILIO,
    also known as "Vinny Hot,"
ANTHONY DELVESCOVO,
    also known as "Anthony
    Delvecchio,"
LEONARD DIMARIA,
    also known as "Lenny," "L,"
    "The Conductor," "Nike,"
    "Uncle" and "Fatso,"
VINCENT DONNIS,
VINCENT DRAGONETTI,
    also known as "Vinny,"
    "Skinny," "Mike," "Mikey"
    and "Marbles,"
ROBERT EPIFANIA,
    also known as "Bobby the
    Jew,"
CODY FARRELL,
RUSSELL FERRISI,
    also known as "One Eye,"
    "Dead Eye" and "Russ,"
LOUIS FILIPPELLI,
RONALD FLAM,
JOSEPH GAGGI,
    also known as "Joe Gag,"
ABID GHANI,
    also known as "Han,"
ANTHONY GIAMMARINO,
    also known as "Buckwheat,"
RICHARD G. GOTTI,
VINCENT GOTTI,
ERNEST GRILLO,
    also known as "Ernie,"
    "Eyes" and "Baldy,"
CHRISTOPHER HOWARD,
STEVEN IARIA,
    also known as "Stevie I,"
    "John," "Simon," "Herman"
    and "Alan,"
EDDIE JAMES,
JOHN KASGORGIS,
WILLIAM KILGANNON,
MICHAEL KING,

2

ANTHONY LICATA,
    also known as "Cheeks,"
    "Anthony Firehawk,"
    "Anthony Nighthawk,"
    "Nighthawk" and "Firehawk,"
LOUIS MOSCA,
LANCE MOSKOWITZ,
ANTHONY O'DONNELL,
    also known as "Tony O,"
JAMES OUTERIE,
    also known as "Big Guy,"
    "Tall Guy," "Treetop,"
    "Top," "Jamesie" and "Bob,"
VINCENT PACELLI,
    also known as "Vinny
    Basile,"
JOHN PISANO,
    also known as "Johnny Red
    Rose,"
TODD POLAKOFF,
GUILIO POMPONIO,
    also known as "Gino,"
RICHARD RANIERI,
    also known as "Fat Richie,"
    "Big Richie," "Joe,"
    "Richie" and "Rich,"
JOHN REGIS,
    also known as "John Reeg"
    and "Reeg,"
JERRY ROMANO,
ANGELO RUGGIERO, JR.,
    also known as "Ang,"
    "Little Ang" and "Junior,"
STEVEN SABELLA,
ANTHONY SCIBELLI,
AUGUSTUS SCLAFANI,
    also known as "Gus" and
    "Gus Boy,"
JOSEPH SCOPO,
WILLIAM SCOTTO,
    also known as "Billy" and
    "Big Billy,"
EDWARD SOBOL,
    also known as "Eddie,"
JOSEPH SPINNATO,
MICHAEL URCIUOLI,
    also known as "Mike the Electrician,"

3

FRANK VASSALLO,
     also known as "Frankie,"
TARA VEGA,
     also known as "Big Tara,"
     and
ARTHUR ZAGARI,

               Defendants.

- - - - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

          At all times relevant to this Indictment unless

otherwise indicated:

The Enterprise

          1.    The members and associates of the Gambino

organized crime family of La Cosa Nostra (the "Gambino family")

constituted an "enterprise," as defined in Title 18, United

States Code, Section 1961(4), that is, a group of individuals

associated in fact.  The Gambino family constituted an ongoing

organization, whose members functioned as a continuing unit for a

common purpose of achieving the objectives of the enterprise.

The Gambino family engaged in, and its activities affected,

interstate and foreign commerce.  The Gambino family was an

organized criminal group that operated in the Eastern District of

New York and other parts of the United States.

          2.     The Gambino family operated through groups of

individuals headed by "captains," who were also referred to as

"skippers," "caporegimes" and "capodecinas."  These groups, which

were referred to as "crews," "regimes" and "decinas," consisted

                              4

of "made" members of the Gambino family, also referred to as

"soldiers," "friends of ours," "good fellows" and "buttons," as

well as associates of the Gambino family.

3.    Each captain was responsible for supervising the

criminal activities of his crew and providing crew members and

associates with support and protection.  In return, the captain

received a share of the earnings of each of the crew's members

and associates.

4.    Above the captains were the three highest-

ranking members of the Gambino family.  The head of the Gambino

family was known as the "boss."  He was assisted by an

"underboss" and a counselor, who was known as the "consigliere."

With the assistance of the underboss and consigliere, the boss

was responsible for setting policy, resolving disputes between

members and associates of the Gambino family and members and

associates of other criminal organizations, and approving all

significant actions taken by members and associates of the

Gambino family, including murder.

5.    The boss, underboss and consigliere of the

Gambino family, who were sometimes referred to collectively as

the "administration," supervised, supported, protected and

disciplined the captains, soldiers and associates and regularly

received reports regarding the activities of the members and

associates of the Gambino family.  In return for their

supervision and protection, the boss, underboss and consigliere received part of the illegal earnings of each crew. When a member of the administration was unable to fulfill his criminal responsibilities because of incarceration, ill health or other reason, a member of the Gambino family was often appointed to that position in an acting capacity.

6.    The Gambino family was part of a nationwide criminal organization known by various names, including the "mafia" and "La Cosa Nostra," which operated through entities known as "families." The ruling body of this nationwide organization was known as the "commission," the membership of which at various times has included the bosses of the five New York City-based families, to wit: the Bonanno, Colombo, Gambino, Genovese and Luchese organized crime families.

7.    From time to time, the Gambino family would propose a list of associates to be "made," that is, to become members of the Gambino family. The list would be circulated to the other families based in New York City.

The Purposes, Methods and Means of the Enterprise

8.    The principal purpose of the Gambino family was to generate money for its members and associates. This purpose was implemented by members and associates of the Gambino family through various criminal activities, including narcotics distribution, extortion, illegal gambling, loansharking, theft,

6

bribery and robbery.  The members and associates of the Gambino family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.    Although the primary purpose of the Gambino family was to generate money for its members and associates, the members and associates at times used the resources of the Gambino family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the Gambino family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.    The members and associates of the Gambino family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities.  That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.    Members and associates of the Gambino family often coordinated street-level criminal activity, such as extortion and fraud, with members and associates of other organized crime families.

7

The Defendants

12.    At various times relevant to this Indictment, the defendant JOHN D'AMICO, also known as "Jackie the Nose" and "Jackie," was a solider, captain and acting boss in the Gambino family.

13.    At various times relevant to this Indictment, the defendant DOMENICO CEFALU, also known as "Italian Dom," "Dominic," "Dom from 18th Avenue" and "The Greaseball," was a soldier, captain and acting underboss in the Gambino family.

14.    At various times relevant to this Indictment, the defendant JOSEPH COROZZO, also known as "JoJo" and "Miserable," was a soldier, captain and consigliere in the Gambino family.

15.    At various times relevant to this Indictment, the defendant NICHOLAS COROZZO, also known as "Nicky," "Little Nicky," "The Doctor," "The Little Guy," "Seymour," "Grandpa" and "Grandfather," was an associate, soldier and captain in the Gambino family, as well as a member of the committee formed to assist John A. Gotti run the family when he was acting boss of the Gambino family.

16.    At various times relevant to this Indictment, the defendants THOMAS CACCIOPOLI, also known as "Tommy Sneakers," and LEONARD DIMARIA, also known as "Lenny," "L," "The

Conductor," "Nike," "Uncle" and "Fatso," were associates, soldiers and captains in the Gambino family.

17.    At various times relevant to this Indictment, the defendants FRANK CALI, LOUIS FILIPPELLI and AUGUSTUS SCLAFANI, also known as "Gus" and "Gus Boy," were associates, soldiers and acting captains in the Gambino family.

18.    At various times relevant to this Indictment, the defendants JEROME BRANCATO, also known as "Jerry," CHARLES CARNEGLIA, also known as "Charlie Canig," MARIO CASSARINO, also known as "Lanza," JOSEPH CHIRICO, also known as "Joe Marco Polo," VINCENT DRAGONETTI, also known as "Vinny," "Skinny," "Mike," "Mikey" and "Marbles," ROBERT EPIFANIA, also known as "Bobby the Jew," RICHARD G. GOTTI, VINCENT GOTTI, ERNEST GRILLO, also known as "Ernie," "Eyes" and "Baldy," ANTHONY LICATA, also known as "Cheeks," "Anthony Firehawk," "Anthony Nighthawk," "Nighthawk" and "Firehawk," JAMES OUTERIE, also known as "Big Guy," "Tall Guy," "Treetop," "Top," "Jamesie" and "Bob," VINCENT PACELLI, also known as "Vinny Basile," ANGELO RUGGIERO, JR., also known as "Ang," "Little Ang" and "Junior," JOSEPH SCOPO and WILLIAM SCOTTO, also known as "Billy" and "Big Billy," were associates and soldiers in the Gambino family.

19.    At various times relevant to this Indictment, the defendants GINO CRACOLICI, VINCENT DECONGILIO, also known as "Vinny Hot," STEVEN IARIA, also known as "Stevie I," "John,"

9

"Simon," "Herman" and "Alan," ANTHONY O'DONNELL, also known as "Tony O," RICHARD RANIERI, also known as "Fat Richie," "Big Richie," "Joe," "Richie" and "Rich," ANTHONY SCIBELLI and JOSEPH SPINNATO were associates in the Gambino family.

20.    At various times relevant to this Indictment, the defendant VINCENT AMARANTE, also known as "Elmo," was a soldier and associate in the Bonanno organized crime family of La Cosa Nostra (the "Bonanno family").

21.    At various times relevant to this Indictment, the defendants STEVEN SABELLA and MICHAEL URCIUOLI, also known as "Mike the Electrician," were associates in the Bonanno family.

22.    At various times relevant to this Indictment, the defendant NICHOLAS CALVO was an associate in the Genovese organized crime family of La Cosa Nostra.

23.    At various times relevant to this Indictment, the defendant MARIO CASSARINO, also known as "Lanza," controlled Jo-Tap Industries, Inc., Jo-Tap Equipment Leasing, Inc. and MBM Industries, Inc.

24.    At various times relevant to this Indictment, the defendant ANTHONY LICATA, also known as "Cheeks," "Anthony Firehawk," "Anthony Nighthawk," "Nighthawk" and "Firehawk," controlled Aragon Enterprises Inc., Night Hawk Enterprise, Inc. and Firehawk Enterprises, Inc.

25.    At various times relevant to this Indictment, the defendant JOSEPH SPINNATO, together with others, controlled Andrews Trucking Corporation, Master Mix, Inc., Master Mix Enterprises, Inc., Dump Masters of NY, Inc. and Dumpmasters Inc.

26.    At various times relevant to this Indictment, the defendant ANTHONY DELVESCOVO, also known as "Anthony Delvecchio," was a Project Manager and Director of Tunnel Operations for Schiavone Construction Company, Inc.

27.    At various times relevant to this Indictment, the defendant SARAH DAURIA was the principal of SRD Contracting Corp.

28.    At various times relevant to this Indictment, the defendant LOUIS MOSCA was a Business Manager for New Jersey Laborers' Union Local 325 of the Laborers' International Union of North America.

29.    At various times relevant to this Indictment, the defendant MICHAEL KING was a Shop Steward for the Building, Concrete, Excavating and Common Laborers' Union Local 731 of Greater New York, affiliated with the Laborers' International Union of North America.

LIUNA Local 325

30.    New Jersey Laborers' Union Local 325 ("Local 325") was a duly chartered local union of the Laborers' International Union of North America ("LIUNA"), and a "labor

11

organization" for purposes of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") governing labor unions, and as that term is defined in Title 29, United States Code, Sections 402(i) and (j).

LIUNA Local 731

31.    Building, Concrete, Excavating and Common Laborers' Union 731 ("Local 731") was a duly chartered local union of the LIUNA and a "labor organization" for purposes of the LMRDA governing labor unions, and as that term is defined at Title 29, United States Code, Sections 402(i) and (j).

Fiduciaries of Local 325 and Local 731

32.    As Business Manager and Shop Steward of Local 325 and Local 731, respectively, the defendants LOUIS MOSCA and MICHAEL KING were subject to Section 501(a) the LMRDA, 29 U.S.C. § 501(a), as "officers, agents, shop stewards, and other representatives" of a labor organization as described in Section 3(q) of the LMRDA, 29 U.S.C. § 402(q).  Pursuant to Section 501(a) of the LMRDA, "officers, agents, shop stewards, and other representatives" of a labor organization occupy positions of trust in relation to such organization and its members as a group.

33.    In such capacity, the defendants LOUIS MOSCA and MICHAEL KING occupied positions of trust in relation to Local 325 and Local 731 and their respective members as a group and

12

were subject to the following fiduciary duties: (1) to hold the money and property of their respective labor organization solely for the benefit of the organization and its members and to manage such money and property in accordance with the labor organization's constitution, by-laws and applicable resolutions of the organization's governing bodies; (2) to refrain from dealing with their respective labor organization as an adverse party or in behalf of any adverse party in any matter connected with his duties; (3) to refrain from holding or acquiring any pecuniary or personal interest which conflicts with the interests of their respective labor organization; and (4) to account to their respective labor organization for any profit received in whatever capacity in connection with transactions conducted by them or under their direction on behalf of such organization.

34.    The defendants LOUIS MOSCA and MICHAEL KING, as an officer and representative of Local 325 and Local 731, respectively, were bound to perform their duties in accordance with the requirements of International and Uniform Local Union Constitutions of the LIUNA and the LIUNA Ethical Practices Code. The LIUNA Ethical Practices Code, which was promulgated on February 15, 1995, and incorporated into the LIUNA Constitution sets forth required practices applicable to every Local Union of LIUNA and every member, employee or officer thereof.

13

COUNT ONE
(Racketeering Conspiracy)

35.    The allegations contained in paragraphs one through nineteen and twenty-three through thirty-four are realleged and incorporated as if fully set forth in this paragraph.

36.    In or about and between February 1975 and February 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, also known as "Tommy Sneakers," CHARLES CARNEGLIA, also known as "Charlie Canig," MARIO CASSARINO, also known as "Lanza," DOMENICO CEFALU, also known as "Italian Dom," "Dominic," "Dom from 18th Avenue" and "The Greaseball," JOSEPH COROZZO, also known as "JoJo" and "Miserable," NICHOLAS COROZZO, also known as "Nicky," "Little Nicky," "The Doctor," "The Little Guy," "Seymour," "Grandpa" and "Grandfather," GINO CRACOLICI, JOHN D'AMICO, also known as "Jackie the Nose" and "Jackie," VINCENT DECONGILIO, also known as "Vinny Hot," LEONARD DIMARIA, also known as "Lenny," "L," "The Conductor," "Nike," "Uncle" and "Fatso," VINCENT DRAGONETTI, also known as "Vinny," "Skinny," "Mike," "Mikey" and "Marbles," ROBERT EPIFANIA, also known as "Bobby the Jew," VINCENT GOTTI, RICHARD G. GOTTI, ERNEST GRILLO, also known as "Ernie," "Eyes" and "Baldy," STEVEN IARIA, also known as "Stevie I," "John," "Simon," "Herman" and "Alan," ANTHONY LICATA, also known as "Cheeks," "Anthony Firehawk,"

14

"Anthony Nighthawk," "Nighthawk" and "Firehawk," JAMES OUTERIE, also known as "Big Guy," "Tall Guy," "Treetop," "Top," "Jamesie" and "Bob," RICHARD RANIERI, also known as "Fat Richie," "Big Richie," "Joe," "Richie" and "Rich," ANGELO RUGGIERO, JR., also known as "Ang," "Little Ang" and "Junior," JOSEPH SCOPO, WILLIAM SCOTTO, also known as "Billy" and "Big Billy," and JOSEPH SPINNATO, together with others, being persons employed by and associated with the Gambino family, an enterprise that engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5).

     37.     The pattern of racketeering activity through which the above-named defendants agreed to conduct the affairs of the enterprise consisted of racketeering acts one through fifty-six, set forth below in paragraphs thirty-eight through two hundred and thirty-three.  Each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

15

### RACKETEERING ACT ONE
(Murder Conspiracy/Murder)

38.    The defendant CHARLES CARNEGLIA committed the following acts, either one of which alone constitutes Racketeering Act One:

A.    <u>Conspiracy to Murder Albert Gelb</u>

39.    On or about and between February 10, 1975 and March 11, 1976, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally conspired to cause the death of Albert Gelb, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.    <u>Murder of Albert Gelb</u>

40.    On or about March 11, 1976, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, together with others, with intent to cause the death of Albert Gelb, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

### RACKETEERING ACT TWO
(Murder)

41.    On or about November 6, 1977, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, with intent to cause the death of Michael Cotillo, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

16

### RACKETEERING ACT THREE
(Murder)

42.    On or about July 29, 1983, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, with intent to cause the death of Salvatore Puma, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

### RACKETEERING ACT FOUR
(Cocaine Distribution Conspiracy)

43.    In or about and between January 1985 and December 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOSEPH COROZZO and VINCENT GOTTI, together with others, knowingly and intentionally conspired to distribute and possess with intent to distribute a controlled substance, which offense involved five kilograms or more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

### RACKETEERING ACT FIVE
(Marijuana Distribution Conspiracy)

44.    In or about and between June 1988 and December 1990, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally conspired to distribute and possess with intent to distribute a

17

controlled substance, which offense involved marijuana, a

Schedule I controlled substance, in violation of Title 21, United

States Code, Sections 841(a)(1) and 846.

RACKETEERING ACT SIX
(Murder Conspiracy/Murder)

45.    The defendant CHARLES CARNEGLIA committed the

following acts, either one of which alone constitutes

Racketeering Act Six:

A.    Conspiracy to Murder Louis DiBono

46.    On or about and between September 1, 1990 and

October 4, 1990, both dates being approximate and inclusive,

within the Eastern District of New York and elsewhere, the

defendant CHARLES CARNEGLIA, together with others, knowingly and

intentionally conspired to cause the death of Louis DiBono, in

violation of New York Penal Law Sections 125.25(1) and 105.15.

B.    Murder of Louis DiBono

47.    On or about October 4, 1990, within the

Southern District of New York, the defendant CHARLES CARNEGLIA,

together with others, with intent to cause the death of Louis

DiBono, caused his death, in violation of New York Penal Law

Sections 125.25(1) and 20.00.

RACKETEERING ACT SEVEN
(Robbery Conspiracy/Robbery/Felony Murder)

48.    The defendant CHARLES CARNEGLIA committed the following acts, any one of which alone constitutes Racketeering Act Seven:

A.    Robbery Conspiracy

49.    On or about and between January 1, 1990 and December 14, 1990, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally conspired to forcibly steal property, to wit: United States currency, from employees of an armored car company, while aided by another person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10.

B.    Robbery

50.    On or about December 14, 1990, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, together with others, did knowingly, intentionally and forcibly steal property, to wit: United States currency, from employees of an armored car company, in violation of New York Penal Law Sections 160.05 and 20.00.

C.    Felony Murder

51.    On or about December 14, 1990, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally

19

committed the robbery of employees of an armored car company and, in the course of and in furtherance of such crime, the defendant or another participant in the robbery caused the death of Jose Delgado Rivera, in violation of New York Penal Law Sections 125.25(3) and 20.00.

RACKETEERING ACT EIGHT

(Extortion Conspiracy/Extortion - John Doe #1)

52.    The defendant CHARLES CARNEGLIA committed the following acts, any one of which alone constitutes Racketeering Act Eight:

A.    Extortion Conspiracy

53.    In or about and between January 1991 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: money, from John Doe #1, an individual whose identity is known to the grand jury, with the consent of John Doe #1, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

20

B.    <u>Extortion</u>

54.    In or about and between January 1991 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: money, from John Doe #1, with the consent of John Doe #1, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

C.    <u>New York Penal Law Extortion</u>

55.    In or about and between January 1991 and January 2003, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, did knowingly and intentionally steal property, to wit: money, from John Doe #1, by extortion, to wit: by compelling and inducing John Doe #1 to deliver such property to the defendant by instilling in him a fear that, if the property was not delivered, the defendant and others would (1) cause physical injury to John Doe #1 in the future, (2) cause damage to John Doe #1's property, and (3) perform an act which would not in itself materially benefit the

defendant, but which was calculated to harm John Doe #1

materially with respect to his health, safety, business, calling,

career, financial condition, reputation and personal

relationships, in violation of New York Penal Law Sections

155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix)

and 20.00.

RACKETEERING ACT NINE
(Extortionate Extension of Credit Conspiracy/Extortionate
Collection of Credit Conspiracy - John Doe #2 and John Doe #3)

56.    The defendants VINCENT DECONGILIO and VINCENT

GOTTI committed the following acts, either one of which alone

constitutes Racketeering Act Nine:

A.    Extortionate Extension of Credit Conspiracy

57.    In or about and between January 1993 and

January 2005, both dates being approximate and inclusive, within

the Eastern District of New York and elsewhere, the defendants

VINCENT DECONGILIO and VINCENT GOTTI, together with others,

knowingly and intentionally conspired to make extortionate

extensions of credit to John Doe #2 and John Doe #3, individuals

whose identities are known to the grand jury, in violation of

Title 18, United States Code, Section 892(a).

B.    Extortionate Collection of Credit Conspiracy

58.    In or about and between January 1993 and

January 2005, both dates being approximate and inclusive, within

the Eastern District of New York and elsewhere, the defendants

22

VINCENT DECONGILIO and VINCENT GOTTI, together with others, knowingly and intentionally conspired to participate in the use of extortionate means to collect and attempt to collect extensions of credit from John Doe #2 and John Doe #3, in violation of Title 18, United States Code, Section 894(a)(1).

RACKETEERING ACT TEN
(Securities Fraud Conspiracy)

59.    The defendants CHARLES CARNEGLIA and LEONARD DIMARIA committed the following acts, either one of which alone constitutes Racketeering Act Ten:

A.    Securities Fraud Conspiracy

60.    In or about and between January 1995 and December 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHARLES CARNEGLIA and LEONARD DIMARIA, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, directly and indirectly, in violation of Rule 10b-5 of the Rules and Regulations of the Securities and Exchange Commission (Title 17, Code of Federal Regulations, Section 240.10b-5), and, directly and indirectly, to (a) employ devices, schemes and artifices to defraud; (b) make untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would

23

and did operate as a fraud and deceit upon the investing public, in connection with purchases and sales of certain securities, and by use of means and instrumentalities of interstate commerce and the mails, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, all in violation of Title 18, United States Code, Section 371.

61.    In furtherance of the conspiracy and to effect its objectives, within the Eastern District of New York and elsewhere, the defendants CHARLES CARNEGLIA and LEONARD DIMARIA, and their coconspirators, committed and caused to be committed, among others, the following:

<u>OVERT ACTS</u>

a.    In or about and between November 1995 and March 1996, CHARLES CARNEGLIA attended a meeting with other coconspirators, whose identities are known to the grand jury, to convince a broker not to sell securities pertaining to Ashton Technology Group, Inc. ("Ashton").

b.    In or about and between November 1995 and March 1996, LEONARD DIMARIA had a meeting with a co-conspirator regarding the sale of securities of Ashton and National Medical Financial Corporation.

c.    In or about and between November 1996 and March 1996, CHARLES CARNEGLIA attended a meeting with other coconspirators, whose identities are known to the grand jury,

24

concerning the sale of securities of Mama Tish's Italian Specialties, Inc.

## RACKETEERING ACT ELEVEN
(Robbery Conspiracy/Robbery)

62.    The defendant CHARLES CARNEGLIA committed the following acts, either one of which alone constitutes Racketeering Act Eleven:

A.    Robbery Conspiracy

63.    On or about and between October 1, 1995 and November 5, 1995, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant CHARLES CARNEGLIA, together with others, knowingly and intentionally conspired to forcibly steal property, to wit: United States currency, from an employee of Papavero Funeral Home, while aided by another person actually present, in violation of New York Penal Law Sections 160.10(1) and 105.10.

B.    Robbery

64.    On or about November 5, 1995, within the Eastern District of New York, the defendant CHARLES CARNEGLIA, together with others, did knowingly, intentionally and forcibly steal property, to wit: United States currency, from an employee of Papavero Funeral Home, in violation of New York Penal Law Sections 160.05 and 20.00.

25

### RACKETEERING ACT TWELVE
(Murder Conspiracy/Murder)

65.    The defendant NICHOLAS COROZZO committed the following acts, either one of which alone constitutes Racketeering Act Twelve:

A.    Conspiracy to Murder Robert Arena and Thomas Maranga

66.    On or about and between January 1, 1996 and January 26, 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant NICHOLAS COROZZO, together with others, knowingly and intentionally conspired to cause the death of Robert Arena and Thomas Maranga, in violation of New York Penal Law Sections 125.25(1) and 105.15.

B.    Murder of Robert Arena

67.    On or about January 26, 1996, within the Eastern District of New York, the defendant NICHOLAS COROZZO, together with others, with intent to cause the death of Robert Arena, caused his death, in violation of New York Penal Law Sections 125.25(1) and 20.00.

### RACKETEERING ACT THIRTEEN
(Murder)

68.    On or about January 26, 1996, within the Eastern District of New York, the defendant NICHOLAS COROZZO, together with others, with intent to cause the death of Thomas

26

Maranga, caused his death, in violation of New York Penal Law
Sections 125.25(1) and 20.00.

## RACKETEERING ACT FOURTEEN
### (Marijuana Distribution Conspiracy)

69.    In or about and between January 1997 and
December 1998, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
VINCENT DECONGILIO, RICHARD G. GOTTI and VINCENT GOTTI, together
with others, did knowingly and intentionally conspire to
distribute and possess with intent to distribute a controlled
substance containing marijuana, a Schedule I controlled
substance, in violation of Title 21, United States Code, Sections
841(a)(1) and 846.

## RACKETEERING ACT FIFTEEN
### (Extortionate Extension of Credit Conspiracy/Extortionate Extension of Credit/Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit – John Doe #1)

70.    The defendants VINCENT DRAGONETTI and STEVEN
IARIA named below committed the following acts, any one of which
alone constitutes Racketeering Act Fifteen:

A.    Extortionate Extension of Credit Conspiracy

71.    In or about August 1998, within the Eastern
District of New York and elsewhere, the defendants VINCENT
DRAGONETTI and STEVEN IARIA, together with others, knowingly and

intentionally conspired to make an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Section 892(a).

B.    Extortionate Extension of Credit

72.    In or about August 1998, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally made an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.    Extortionate Collection of Credit Conspiracy

73.    In or about and between August 1998 and December 1998, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Section 894(a)(1).

D.    Extortionate Collection of Credit

74.    In or about and between August 1998 and December 1998, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally participated in the use of

28

extortionate means to collect and attempt to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT SIXTEEN
(Extortion Conspiracy/Extortion – Trucking)

75.    The defendants THOMAS CACCIOPOLI, ROBERT EPIFANIA and JOSEPH SCOPO committed the following acts, any one of which alone constitutes Racketeering Act Sixteen:

A.    Extortion Conspiracy

76.    In or about and between December 1999 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, ROBERT EPIFANIA and JOSEPH SCOPO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: cash payments relating to John Doe #4's trucking concerns, from John Doe #4, an individual whose identity is known to the grand jury, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    Extortion

77.    In or about and between December 1999 and
January 2008, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
THOMAS CACCIOPOLI, ROBERT EPIFANIA and JOSEPH SCOPO, together
with others, did knowingly and intentionally obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, by extortion, in that the defendants and others
obtained property, to wit: cash payments relating to John Doe
#4's trucking concerns, from John Doe #4, with the consent of
John Doe #4, which consent was induced through wrongful use of
actual and threatened force, violence and fear, in violation of
Title 18, United States Code, Sections 1951(a) and 2.

C.    New York Penal Law Extortion

78.    In or about and between December 1999 and
January 2008, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
THOMAS CACCIOPOLI, ROBERT EPIFANIA and JOSEPH SCOPO, together
with others, did knowingly and intentionally steal property, to
wit: cash payments relating to John Doe #4's trucking concerns,
from John Doe #4, by extortion, to wit: by compelling and
inducing John Doe #4 to deliver such property to one or more of
the defendants by instilling in him a fear that, if the property
was not delivered, the defendants and others would (a) cause

30

physical injury to John Doe #4 in the future, (b) cause damage to John Doe #4's property, and (c) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

### RACKETEERING ACT SEVENTEEN
(Extortionate Extension of Credit Conspiracy/Extortionate Extension of Credit/Extortionate Collection of Credit Conspiracy/Extortionate Collection of Credit – John Doe #1)

79.    The defendants VINCENT DRAGONETTI and STEVEN IARIA committed the following acts, any one of which alone constitutes Racketeering Act Seventeen:

A.    Extortionate Extension of Credit Conspiracy

80.    In or about August 2000, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to make an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Section 892(a).

B.    Extortionate Extension of Credit

81.    In or about August 2000, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and

31

intentionally made an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.    Extortionate Collection of Credit Conspiracy

82.    In or about and between August 2000 and December 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Section 894(a)(1).

D.    Extortionate Collection of Credit

83.    In or about and between August 2000 and December 2000, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

32

RACKETEERING ACT EIGHTEEN
(Extortionate Extension of Credit Conspiracy/Extortionate
Extension of Credit/Extortionate Collection of Credit
Conspiracy/Extortionate Collection of Credit – John Doe #1)

84.    The defendants VINCENT DRAGONETTI and STEVEN IARIA committed the following acts, any one of which alone constitutes Racketeering Act Eighteen:

A.    Extortionate Extension of Credit Conspiracy

85.    In or about January 2001, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to make an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Section 892(a).

B.    Extortionate Extension of Credit

86.    In or about January 2001, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally made an extortionate extension of credit to John Doe #1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.    Extortionate Collection of Credit Conspiracy

87.    In or about and between January 2001 and April 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others,

33

knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Section 894(a)(1).

D.    Extortionate Collection of Credit

88.    In or about and between January 2001 and April 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT NINETEEN
(Extortionate Extension of Credit Conspiracy)

89.    In or about and between May 2001 and June 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT DRAGONETTI and STEVEN IARIA, together with others, knowingly and intentionally conspired to make extortionate extensions of credit, in violation of Title 18, United States Code, Section 892(a).

34

RACKETEERING ACT TWENTY
(Theft of Union Benefits/Mail Fraud)

90.    The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Twenty:

A.    Theft of Union Benefits

91.    In or about and between June 2002 and December 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.    Mail Fraud

92.    In or about and between June 2002 and December 2002, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did knowingly and intentionally

35

devise a scheme and artifice to defraud the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund and Pension Fund (the "Local 282 Funds") and employees covered by labor contracts with the International Brotherhood of Teamsters Local 282 ("Local 282") who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses, representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

93.     It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

94.     For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the

36

Local 282 Funds, in violation of Title 18, United States Code,
Sections 1341 and 2.

<u>RACKETEERING ACT TWENTY-ONE</u>
(Theft of Union Benefits/Mail Fraud)

95.    The defendant JOSEPH SPINNATO committed the
following acts, either one of which alone constitutes
Racketeering Act Twenty-One:

A.    <u>Theft of Union Benefits</u>

96.    In or about and between January 2003 and
December 2003, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant
JOSEPH SPINNATO, together with others, did embezzle, steal and
unlawfully and willfully abstract and convert to his own use,
moneys, funds, securities, premiums, credits, property and other
assets of the International Brotherhood of Teamsters Local 282
Health and Welfare Benefit Fund, an employee welfare benefit plan
subject to Title I of ERISA, and the International Brotherhood of
Teamsters Local 282 Pension Fund, an employee pension benefit
plan subject to Title I of ERISA, and of funds connected with
such employee benefit plans, in violation of Title 18, United
States Code, Sections 664 and 2.

B.    <u>Mail Fraud</u>

97.    In or about and between January 2003 and
December 2003, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendant

37

JOSEPH SPINNATO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Local 282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses, representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

98.    It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

99.    For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the

Local 282 Funds, in violation of Title 18, United States Code,
Sections 1341 and 2.

## RACKETEERING ACT TWENTY-TWO
### (Extortionate Extension of Credit Conspiracy)

100.    In or about and between January 2003 and
October 2004, both dates being approximate and inclusive, within
the Eastern District of New York and elsewhere, the defendants
VINCENT DRAGONETTI and STEVEN IARIA, together with others,
knowingly and intentionally conspired to make extortionate
extensions of credit, in violation of Title 18, United States
Code, Section 892(a).

## RACKETEERING ACT TWENTY-THREE
### (Murder Conspiracy/Attempted Murder)

101.    The defendants RICHARD G. GOTTI, VINCENT GOTTI
and ANGELO RUGGIERO, JR. committed the following acts, either one
of which alone constitutes Racketeering Act Twenty-Three:

A.    Conspiracy to Murder John Doe #5

102.    On or about and between April 1, 2003 and May
4, 2003, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
RICHARD G. GOTTI, VINCENT GOTTI and ANGELO RUGGIERO, JR.,
together with others, knowingly and intentionally conspired to
cause the death of John Doe #5, in violation of New York Penal
Law Sections 125.25(1) and 105.15.

B.    <u>Attempted Murder of John Doe #5</u>

103.    On or about May 4, 2003, within the Eastern District of New York, the defendants RICHARD G. GOTTI, VINCENT GOTTI and ANGELO RUGGIERO, JR., together with others, with intent to cause the death of John Doe #5, attempted to cause his death, in violation of New York Penal Law Sections 125.25(1), 110.00 and 20.00.

<u>RACKETEERING ACT TWENTY-FOUR</u>
(Extortion Conspiracy/Extortion –
Staten Island Cement Company)

104.    The defendants THOMAS CACCIOPOLI, MARIO CASSARINO, DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO, LEONARD DIMARIA, ROBERT EPIFANIA and ERNEST GRILLO, committed the following acts, any one of which alone constitutes Racketeering Act Twenty-Four:

A.    <u>Extortion Conspiracy</u>

105.    In or about and between December 2003 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, MARIO CASSARINO, DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO, LEONARD DIMARIA, ROBERT EPIFANIA and ERNEST GRILLO, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed

40

to obtain property, to wit: cash and check payments relating to the operation of John Doe #4's Staten Island cement company, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

   B.   Extortion

        106.    In or about and between December 2003 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, MARIO CASSARINO, DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO, LEONARD DIMARIA, ROBERT EPIFANIA and ERNEST GRILLO, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others obtained property, to wit: cash and check payments relating to the operation of John Doe #4's Staten Island cement company, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

   C.   New York Penal Law Extortion

        107.    In or about and between December 2003 and January 2008, both dates being approximate and inclusive, within

41

the Eastern District of New York and elsewhere, the defendants THOMAS CACCIOPOLI, MARIO CASSARINO, DOMENICO CEFALU, JOSEPH COROZZO, NICHOLAS COROZZO, JOHN D'AMICO, LEONARD DIMARIA, ROBERT EPIFANIA and ERNEST GRILLO, together with others, did knowingly and intentionally steal property, to wit: cash and check payments relating to the operation of John Doe #4's Staten Island cement company, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to deliver such property to one or more of the defendants by instilling in him a fear that, if the property was not delivered, the defendants and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

<u>RACKETEERING ACT TWENTY-FIVE</u>
(Theft of Union Benefits/Mail Fraud)

108.    The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Twenty-Five:

42

A.    <u>Theft of Union Benefits</u>

109.    In or about and between January 2004 and December 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.    <u>Mail Fraud</u>

110.    In or about and between January 2004 and December 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Local 282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses,

43

representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

111.    It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

112.    For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

### RACKETEERING ACT TWENTY-SIX
(Theft of Union Benefits/Mail Fraud)

113.    The defendant MARIO CASSARINO committed the following acts, either one of which alone constitutes Racketeering Act Twenty-Six:

44

A.    Theft of Union Benefits

114.    In or about and between November 2004 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARIO CASSARINO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.    Mail Fraud

115.    In or about and between November 2004 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARIO CASSARINO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Local 282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses,

45

representations and promises, to wit: contributions to the Local 282 Funds and the contractual right to have such contributions made on behalf of such employees.

116.    It was part of the scheme and artifice that the defendant MARIO CASSARINO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

117.    For the purpose of executing the scheme and artifice, the defendant MARIO CASSARINO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

RACKETEERING ACT TWENTY-SEVEN
(Theft of Union Benefits/Mail Fraud)

118.    The defendant JOSEPH SPINNATO committed the following acts, either one of which alone constitutes Racketeering Act Twenty-Seven:

46

A.    <u>Theft of Union Benefits</u>

119.    In or about and between January 2005 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did embezzle, steal and unlawfully and willfully abstract and convert to his own use, moneys, funds, securities, premiums, credits, property and other assets of the International Brotherhood of Teamsters Local 282 Health and Welfare Benefit Fund, an employee welfare benefit plan subject to Title I of ERISA, and the International Brotherhood of Teamsters Local 282 Pension Fund, an employee pension benefit plan subject to Title I of ERISA, and of funds connected with such employee benefit plans, in violation of Title 18, United States Code, Sections 664 and 2.

B.    <u>Mail Fraud</u>

120.    In or about and between January 2005 and December 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOSEPH SPINNATO, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Local 282 Funds and employees covered by labor contracts with Local 282 who were participants in the Local 282 Funds and to obtain money and property, to which the Local 282 Funds and participants were entitled, by means of false and fraudulent pretenses,

47

representations and promises, to wit: contributions to Local 282 Funds.

121.    It was part of the scheme and artifice that the defendant JOSEPH SPINNATO, together with others, would and did submit and cause to be submitted false information to the Local 282 Funds regarding hours worked by employees covered by labor contracts with Local 282, claiming that certain hours had been worked by such employees who had, in fact, worked more hours, thereby under reporting and under paying contributions to the Local 282 Funds which were owed to the funds and required to be made on behalf of the employees.

122.    For the purpose of executing the scheme and artifice, the defendant JOSEPH SPINNATO and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: remittance reports and checks payable to the Local 282 Funds, in violation of Title 18, United States Code, Sections 1341 and 2.

### RACKETEERING ACT TWENTY-EIGHT
(Extortion Conspiracy/Extortion - Mayrich Construction Site)

123.    The defendant GINO CRACOLICI committed the following acts, any one of which alone constitutes Racketeering Act Twenty-Eight:

48

A.    Extortion Conspiracy

124.    On or about and between April 1, 2005 and June 28, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GINO CRACOLICI, together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others agreed to obtain property, to wit: cash and check payments relating to John Doe #4's work at a Mayrich Construction Site, from John Doe #4, with the consent of John Doe #4, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    Extortion

125.    On or about and between April 1, 2005 and June 28, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GINO CRACOLICI, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others obtained property, to wit: cash and check payments relating to John Doe #4's work at a Mayrich Construction site, from John Doe #4, with the consent of John Doe #4, which consent was induced through wrongful use of actual and threatened force,

49

violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

    C.   <u>New York Penal Law Extortion</u>

        126.    On or about and between April 1, 2005 and June 28, 2005, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant GINO CRACOLICI, together with others, did knowingly and intentionally steal property, to wit: cash and check payments relating to John Doe #4's work at a Mayrich Construction site, from John Doe #4, by extortion, to wit: by compelling and inducing John Doe #4 to deliver such property to the defendant by instilling in him a fear that, if the property was not delivered, the defendant and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

RACKETEERING ACT TWENTY-NINE
(Extortion/Extortionate Collection of Credit - ADCO Electrical
Corporation Debt)

127.     The defendant WILLIAM SCOTTO committed the
following acts, any one of which alone constitutes Racketeering
Act Twenty-Nine:

A.    Extortion

128.     On or about April 29, 2005, within the Eastern
District of New York and elsewhere, the defendant WILLIAM SCOTTO,
together with others, did knowingly and intentionally obstruct,
delay and affect commerce, and the movement of articles and
commodities in commerce, by extortion, in that the defendant and
others obtained property, to wit: a check payment relating to an
alleged debt owed by John Doe #4 to ADCO Electrical Corporation,
from John Doe #4, with the consent of John Doe #4, which consent
was induced through wrongful use of actual force, violence and
fear, in violation of Title 18, United States Code, Sections
1951(a) and 2.

B.    New York Penal Law Extortion

129.     On or about April 29, 2005, within the Eastern
District of New York and elsewhere, the defendant WILLIAM SCOTTO,
together with others, did knowingly and intentionally steal
property, to wit: a check payment relating to an alleged debt
owed by John Doe #4 to ADCO Electrical Corporation, from John Doe
#4, by extortion, to wit: by compelling and inducing John Doe #4

51

to deliver such property to the defendant by instilling in him a fear that, if the property was not delivered, the defendant and others would (1) cause physical injury to John Doe #4 in the future, (2) cause damage to John Doe #4's property, and (3) perform an act which would not in itself materially benefit the defendant, but which was calculated to harm John Doe #4 materially with respect to his health, safety, business, calling, career, financial condition, reputation and personal relationships, in violation of New York Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix) and 20.00.

C.    Extortionate Collection of Credit

130.    On or about April 29, 2005, within the Eastern District of New York and elsewhere, the defendant WILLIAM SCOTTO, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #4, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT THIRTY
(Extortion Conspiracy/Attempted Extortion – Pump Truck)

131.    The defendants NICHOLAS COROZZO and LEONARD DIMARIA committed the following acts, any one of which alone constitutes Racketeering Act Thirty:

52

A.    Extortion Conspiracy

132.    In or about and between June 2005 and July
2007, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did
knowingly and intentionally conspire to obstruct, delay and
affect commerce, and the movement of articles and commodities in
commerce, by extortion, in that the defendants and others agreed
to obtain property, to wit: money relating to John Doe #4's pump
truck business, from John Doe #4, with the consent of John Doe
#4, which consent was to be induced through wrongful use of
actual and threatened force, violence and fear, in violation of
Title 18, United States Code, Sections 1951(a) and 2.

B.    Attempted Extortion

133.    In or about and between June 2005 and July
2007, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did
knowingly and intentionally attempt to obstruct, delay and affect
commerce, and the movement of articles and commodities in
commerce, by extortion, in that the defendant and others
attempted to obtain property, to wit: money relating to John Doe
#4's pump truck business, from John Doe #4, with the consent of
John Doe #4, which consent was to be induced through wrongful use

of actual and threatened force, violence and fear, in violation
of Title 18, United States Code, Sections 1951(a) and 2.

    C.   <u>New York Penal Law Attempted Extortion</u>

    134.    In or about and between June 2005 and July
2007, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
NICHOLAS COROZZO and LEONARD DIMARIA, together with others, did
knowingly and intentionally attempt to steal property, to wit:
cash and check payments relating to John Doe #4's work for the
pump truck business, from John Doe #4, by extortion, to wit: by
compelling and inducing John Doe #4 to deliver such property to
the defendant by instilling in him a fear that, if the property
was not delivered, the defendants and others would (1) cause
physical injury to John Doe #4 in the future, (2) cause damage to
John Doe #4's property, and (3) perform an act which would not in
itself materially benefit the defendants, but which was
calculated to harm John Doe #4 materially with respect to his
health, safety, business, calling, career, financial condition,
reputation and personal relationships, in violation of New York
Penal Law Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii),
155.05(2)(e)(ix), 110.00 and 20.00.

RACKETEERING ACT THIRTY-ONE
(Extortion/Extortionate Collection of Credit - El Camino
Trucking Debt)

135.    The defendant WILLIAM SCOTTO committed the
following acts, any one of which alone constitutes Racketeering
Act Thirty-One:

A.    Extortion

136.    On or about June 8, 2005, within the Eastern
District of New York and elsewhere, the defendant WILLIAM SCOTTO,
together with others, did knowingly and intentionally obstruct,
delay and affect commerce, and the movement of articles and
commodities in commerce, by extortion, in that the defendant and
others obtained property, to wit: money relating to an alleged
debt owed by John Doe #4 to El Camino Trucking Corporation, from
John Doe #4, with the consent of John Doe #4, which consent was
induced through wrongful use of actual and threatened force,
violence and fear, in violation of Title 18, United States Code,
Sections 1951(a) and 2.

B.    New York Penal Law Extortion

137.    On or about June 8, 2005, within the Eastern
District of New York and elsewhere, the defendant WILLIAM SCOTTO,
together with others, did knowingly and intentionally steal
property, to wit: money relating to an alleged debt owed by John
Doe #4 to El Camino Trucking Corporation, from John Doe #4, by
extortion, to wit: by compelling and inducing John Doe #4 to

deliver such property to the defendant by instilling in him a
fear that, if the property was not delivered, the defendant and
others would (1) cause physical injury to John Doe #4 in the
future, (2) cause damage to John Doe #4's property, and (3)
perform an act which would not in itself materially benefit the
defendant, but which was calculated to harm John Doe #4
materially with respect to his health, safety, business, calling,
career, financial condition, reputation and personal
relationships, in violation of New York Penal Law Sections
155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii), 155.05(2)(e)(ix)
and 20.00.

    C.    <u>Extortionate Collection of Credit</u>

    138.    On or about June 8, 2005, within the Eastern
District of New York and elsewhere, the defendant WILLIAM SCOTTO,
together with others, knowingly and intentionally participated in
the use of extortionate means to collect and attempt to collect
an extension of credit from John Doe #4, in violation of Title
18, United States Code, Sections 894(a)(1) and 2.

<u>RACKETEERING ACT THIRTY-TWO</u>
(Extortion Conspiracy/Attempted Extortion – Construction List)

    139.    The defendants NICHOLAS COROZZO, LEONARD
DIMARIA, ERNEST GRILLO and ANGELO RUGGIERO, JR. committed the
following acts, any one of which alone constitutes Racketeering
Act Thirty-Two:

A.    Extortion Conspiracy

140.    In or about and between July 2005 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA, ERNEST GRILLO and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally conspire to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: money, from a number of individuals and companies in the construction industry, whose identities are known to the grand jury, with the consent of those individuals, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

B.    Attempted Extortion

141.    In or about and between July 2005 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA, ERNEST GRILLO and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendant and others attempted to obtain

57

property, to wit: money, from a number of individuals and companies in the construction industry, whose identities are known to the grand jury, with the consent of those individuals, which consent was to be induced through wrongful use of actual and threatened force, violence and fear, in violation of Title 18, United States Code, Sections 1951(a) and 2.

    C.    <u>New York Penal Law Attempted Extortion</u>

      142.    In or about and between July 2005 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA, ERNEST GRILLO and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally attempt to steal property, to wit: money relating to a number of individuals and companies in the construction industry, whose identities are known to the grand jury, by extortion, to wit: by compelling and inducing the individuals to deliver such property to the defendants by instilling in them a fear that, if the property was not delivered, the defendants and others would (1) cause physical injury to those individuals in the future, (2) cause damage to those individuals's property, and (3) perform an act which would not in itself materially benefit the defendants, but which was calculated to harm those individuals materially with respect to their health, safety, business, calling, career, financial condition, reputation and

personal relationships, in violation of New York Penal Law

Sections 155.30(6), 155.05(2)(e)(i), 155.05(2)(e)(ii),

155.05(2)(e)(ix), 110.00 and 20.00.

RACKETEERING ACT THIRTY-THREE
(Illegal Gambling – Bookmaking)

143.    The defendants NICHOLAS COROZZO, LEONARD

DIMARIA, VINCENT DRAGONETTI, STEVEN IARIA, JAMES OUTERIE and

RICHARD RANIERI committed the following acts, either one of which

alone constitutes Racketeering Act Thirty-Three:

A.    <u>Illegal Gambling</u>

144.    In or about and between September 2005 and

January 2008, both dates being approximate and inclusive, within

the Eastern District of New York and elsewhere, the defendants

NICHOLAS COROZZO, LEONARD DIMARIA, VINCENT DRAGONETTI, STEVEN

IARIA, JAMES OUTERIE and RICHARD RANIERI, together with others,

knowingly and intentionally conducted, financed, managed,

supervised, directed and owned all or part of an illegal gambling

business, to wit: a gambling business involving bookmaking, which

operated in violation of the laws of the State of New York, to

wit: New York Penal Law Sections 225.05, 225.10(1) and 20.00,

which involved five or more persons who conducted, financed,

managed, supervised, directed and owned all or part of such

business and which remained in substantially continuous operation

59

for a period in excess of 30 days and had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955 and 2.

B.    New York Penal Law Illegal Gambling

145.    In or about and between September 2005 and January 2008, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NICHOLAS COROZZO, LEONARD DIMARIA, VINCENT DRAGONETTI, STEVEN IARIA, JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally advanced and profited from unlawful gambling activity by engaging in bookmaking, in that they received and accepted in any one day more than five bets totaling more than five thousand dollars, in violation of New York Penal Law Sections 225.10(1) and 20.00.

RACKETEERING ACT THIRTY-FOUR
(Bribery of a Labor Official/Honest Services Mail Fraud/
Embezzlement of Union Assets - Laborers' Local 325)

146.    The defendant LEONARD DIMARIA committed the following acts, any one of which alone constitutes Racketeering Act Thirty-Four:

A.    Bribery of a Labor Official

147.    On or about and between September 16, 2005 and July 14, 2006, both dates being approximate and inclusive, within the Eastern District of New York, the defendant LEONARD DIMARIA, together with others, knowingly and intentionally conferred and

60

offered benefits to a labor official, that is, Louis Mosca, who is not named as a defendant in this Racketeering Act, with the intent to influence him in respect to his acts, decisions and duties as a labor official, in violation of New York Penal Law Section 180.15.

      B.   <u>Honest Services Mail Fraud</u>

      148.    On or about and between September 16, 2005 and July 14, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LEONARD DIMARIA and Louis Mosca, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Local 325 and its members and to obtain property, to wit: a LIUNA membership card issued to a person not entitled to journeyworker membership in the union, by means of false and fraudulent pretenses, relationships and promises and to deprive them of the intangible right to the honest services of Louis Mosca, including the honest services Mosca owed to Local 325 and its members pursuant to Section 501(a) of the LMRDA, the LIUNA Ethical Practices Code and the Uniform Local Union Constitution of the LIUNA.

      149.    It was part of the scheme and artifice to defraud that Louis Mosca agreed to accept and accepted a thing of value from John Doe #4 with the intent to be influenced in his

decisions regarding the admission of an individual to membership in Local 325 and the placement of the individual in a job.

150.    For the purpose of executing the scheme and artifice, the defendant LEONARD DIMARIA and Louis Mosca and others did place and cause to be placed in authorized depositories for mail matter to be delivered by the United States Postal Service items of mail matter, to wit: written information pertaining to an individual proposed for membership in the LIUNA and a LIUNA membership card, in violation of Title 18, United States Code, Sections 1341, 1346 and 2.

C.    Embezzlement of Union Assets

151.    On or about and between September 16, 2005 and July 14, 2006, both dates being approximate and inclusive, in the Eastern District of New York and elsewhere, the defendant LEONARD DIMARIA, together with others including Louis Mosca, while Mosca was an officer of Local 325, did embezzle, steal and unlawfully and willfully abstract and convert to their own use the moneys, funds, securities, property, and other assets of Local 325, to wit: an application document pertaining to an individual proposed for membership in the LIUNA and a LIUNA membership card, in exchange for approximately $2,000, in violation of Title 29, United States Code, Section 501(c) and Title 18, United States Code, Section 2.

RACKETEERING ACT THIRTY-FIVE
(Extortionate Collection of Credit Conspiracy/
Extortionate Collection of Credit - John Doe #6)

152.    The defendants JAMES OUTERIE and RICHARD RANIERI committed the following acts, either one of which alone constitutes Racketeering Act Thirty-Five:

A.    Extortionate Collection of Credit Conspiracy

153.    In or about and between November 2005 and May 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally conspired to use extortionate means to collect an extension of credit from John Doe #6, an individual whose identity is known to the grand jury, in violation of Title 18, United States Code, Section 894(a)(1).

B.    Extortionate Collection of Credit

154.    In or about and between November 2005 and May 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JAMES OUTERIE and RICHARD RANIERI, together with others, knowingly and intentionally participated in the use of extortionate means to collect and attempt to collect an extension of credit from John Doe #6, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

63